IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | | |
|---|---|---|
| 3501 13TH STREET, N.W., LLC | ) | |
| c/o Roger Schlossberg, Trustee | ) | |
| Managing Member | ) | |
| 18421 Henson Blvd., Suite 201 | ) | |
| Hagerstown, MD 21742 | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: _____ |
| | ) | |
| JEFFREY NADEL | ) | |
| d/b/a Law Offices of Jeffrey Nadel | ) | |
| 4041 Powder Mill Road, Suite 415 | ) | |
| Calverton, MD 20705 | ) | |
| | ) | |
|     Defendant. | ) | |
| | ) | |

## COMPLAINT

Plaintiff, 3501 13th Street, N.W., LLC ("3501" or "Plaintiff"), by and through its

undersigned counsel, hereby sues Defendant, Jeffrey Nadel, and states as follows:

### Parties and Jurisdiction

1.      Plaintiff is a limited liability company organized under the laws of the District of

Columbia. The principal office of Plaintiff's managing member, Roger Schlossberg, Esq., is

located in Washington County, Maryland.

2.      Defendant Jeffrey Nadel ("Nadel") is an attorney licensed by the State of

Maryland who practices law throughout the State through his firm, the Law Offices of Jeffrey

Nadel, which maintains its principal office in Prince George's County, Maryland.

3.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1334(b) because this is an action arising in or related to a case under Title 11 of the United States Code, namely *In re 3501 13th Street, N.W., LLC*, Case No. 13-22333 (Bankr. D. Md.).

4.      This Court has personal jurisdiction over the Defendant because the Defendant is domiciled in and maintains his principal place of business in the State of Maryland.

5.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because the Defendant resides in this judicial district and a substantial part of the events and omissions giving rise to the Plaintiff's claim occurred in this judicial district.

## Statement of Facts

6.      The allegations contained in Paragraphs 1-5, *supra*, are hereby adopted and incorporated by reference as if fully set forth herein.

7.      On or about December 7, 2006, Robert Schaechter loaned the principal sum of $500,000.00 to Steven Madeoy, individually (the "Schaechter Loan").

8.      The Schaechter Loan is evidenced by a personal check for $500,000.00 drawn on a SunTrust Bank account titled jointly in the names of Robert D. Schaechter and Sara Lee Schaechter and made payable to "Steve Madeoy" (the "Schaechter Check").  A true and accurate copy of the Schaechter Check (with account numbers redacted) is attached hereto as **Exhibit 1**.

9.      Madeoy, who deposited the Schaechter Check in his personal bank account, was solely responsible for repaying the Schaechter Loan.

10.      At the time of the Schaechter Loan, Madeoy owned a 45% membership interest in 3501.

11.      Schaechter did not loan any money to 3501. 3501 did not benefit from, or receive any value in exchange for, the Schaechter Loan to Madeoy.

12.     Attorney Nadel agreed to prepare appropriate documentation of the loan transaction between Schaechter and Madeoy.

13.     Nadel had represented Madeoy for many years in connection with numerous real estate and related transactions involving Madeoy and his business entities, including prior transactions between Madeoy and Schaechter.

14.     As described below, Nadel undertook to represent 3501 in connection with the documentation of the loan transaction between Schaechter and Madeoy.

15.     Nadel prepared a Promissory Note (the "Note") dated December 7, 2006 which falsely stated that Schaechter loaned money to 3501.

16.     The Note states, in relevant part:

> 3501 13th Street, N.W., LLC, a D.C. Limited Liability Company, Sole Tenant, the undersigned ("Borrower") promises to pay to the order of Robert Schaechter, the ("Lender"), the Principal Sum of FIVE HUNDRED TWENTY FIVE THOUSAND DOLLARS ($525,000.00), with Interest on the unpaid Principal balance actually advanced by Lender, at a rate of SIXTEEN PERCENT (16.00%) per annum from the date of this Note until paid.

17.     The Note was then executed by Madeoy and Scott Posey, purportedly on behalf of 3501. A true and accurate copy of the Note is attached hereto as **Exhibit 2**.

18.     Nadel also prepared a "Money Loaned Deed of Trust" (the "DOT") dated December 7, 2006 by which 3501 pledged the real property commonly known and described as 3501 13th Street N.W., Washington, DC  owned in fee simple by 3501 (the "Property") as collateral for the fictitious loan from Schaechter to 3501 documented in the Note.

19.     The DOT states, in pertinent part, that its purpose is "TO SECURE to Lender [Schaechter] the repayment of the indebtedness evidenced by Borrower's [3501's] Promissory

Note dated even date herewith, held by Robert Schaechter" and purports to convey the Property to a trustee for the benefit of Schaechter.

20.     The DOT was executed by Madeoy and Posey, purportedly on behalf of 3501. A true and accurate copy of the DOT is attached hereto as **Exhibit 3**.

21.     By preparing the Note, in which 3501 acknowledged a debt to Schaechter that did not exist, and by preparing the DOT, in which 3501 pledged its Property as collateral for the fictitious debt, Nadel acted as 3501's attorney. Consequently, Nadel owed a duty of care to 3501 to act in the best interests of 3501 and to avoid actions likely to result in substantial injury to 3501.

22.     The DOT falsely states that Madeoy and Posey were the sole members of 3501 at the time the DOT was executed.

23.     The members of 3501 never authorized, and never even met to consider the authorization of, the issuance of the Note or the DOT.

24.     3501 did not receive any value in exchange for the Note or the DOT.

25.     Schaechter and Madeoy agreed in 2006 that the DOT would not be recorded at that time.

26.     At the time Nadel drafted the Note and DOT in 2006, he was aware that the recording of the DOT would trigger Fannie Mae, the senior lender on the Property, to fully call its first trust loan on the Property.

27.     Indeed, Nadel wrote a letter to Schaechter and Madeoy (3501's then-managing member) on December 12, 2006 confirming Schaechter's agreement not to record the DOT because "the recording of any junior financing on this property will act as a trigger to have the

first trust loan fully called." A true and accurate copy of the Nadel's December 12, 2006 letter to Schaechter is attached hereto as **Exhibit 4**.

28.     In or about July 2010, Nadel was asked to amend the terms of the Note and to record the DOT with the District of Columbia Recorder of Deeds.

29.     Nadel confirmed his continued representation in an email dated July 14, 2010. A true and accurate copy of Nadel's July 14, 2010 email is attached hereto as **Exhibit 5**.

30.     On July 14, 2010, Nadel advised the parties that they could not legally encumber 3501's Property and could only encumber Madeoy's ownership interest in 3501. As a result, Nadel further advised the parties that Schaechter could seek to collect his outstanding loan to Madeoy only from Madeoy's 45% membership in 3501 and not from 3501's Property. *See* **Exhibit 5**.

31.     Despite knowing that Schaechter did not loan any money to 3501, Nadel nevertheless prepared an Amended Note in which the loan repayment term was changed from 90 days to five years, notwithstanding that such a modification clearly was not in the best interest of his client, 3501. A true and accurate copy of the Amended Note is attached hereto as **Exhibit 6**.

32.     Notwithstanding his own advice to Schaechter and 3501 (through Madeoy) and despite knowing that Schaechter could not legally obtain a security interest in 3501's Property, Nadel nevertheless forwarded the DOT and a Real Property Recordation and Transfer Tax Form ("the Recordation Form") to Potomac Title Corporation on July 14, 2010 with instructions to record the DOT with the District of Columbia Recorder of Deeds. A true and accurate copy of Nadel's July 14, 2010 letter to Potomac Title Corporation and related documents, including the Recordation Form (with account numbers redacted), is attached hereto collectively as **Exhibit 7**.

33.     Nadel executed the Recordation Form on behalf of 3501.

34.     By executing the Recordation Form on behalf of 3501, Nadel acknowledged that he continued to represent 3501 in the transaction and was acting as 3501's agent and counsel.

35.     3501 did not authorize Nadel to execute the Recordation Form on its behalf.

36.     Nadel represented 3501 notwithstanding that he simultaneously represented Schaechter, an adverse party, in the same transaction.

37.     Nadel did not obtain 3501's consent, written or otherwise, to the conflict of interest inherent in his simultaneous adverse representation of Schaechter and 3501.

38.     In addition to representing Schaechter and 3501, on information and belief, Nadel also represented Fannie Mae as of July 2010 and was familiar with Fannie Mae's lending practices and its sensitivity to non-monetary defaults by borrowers.

39.     At no time in July 2010 did Nadel disclose to 3501 that he simultaneously represented Fannie Mae.

40.     Nadel did not obtain 3501's consent, written or otherwise, to the conflict of interest inherent in his simultaneous adverse representation of Fannie Mae and 3501.

41.     Nadel caused the DOT to be recorded with the District of Columbia Recorder of Deeds notwithstanding that he knew that Madeoy could not legally encumber 3501's Property and could only encumber his membership interest in 3501.

42.     Nadel caused the DOT to be recorded with the District of Columbia Recorder of Deeds notwithstanding that he knew that the recording of the DOT would cause his other client, Fannie Mae, to call its first trust loan on the Property.

43.     On August 5, 2010, District of Columbia Recorder of Deeds formally recorded the DOT as Instrument No. 2010067869.

6

44.     On May 20, 2013, Fannie Mae formally declared the first trust loan on 3501's Property to be in default due to the "subsequent encumbrance of the Property" caused by Nadel's recording of the DOT, and accelerated the entire balance of its $3.8 million loan to 3501. A true and accurate copy of Fannie Mae's May 20, 2013 default letter to 3501 is attached hereto as **Exhibit 8**.

45.     On July 19, 2013, shortly after Fannie Mae called its first trust loan on the Property, 3501 filed a Voluntary Petition under the provisions of Chapter 11 of the Bankruptcy Code.

46.     As a direct consequence of Fannie Mae calling of its first trust loan on 3501's Property, 3501 was required to pay a prepayment premium of $74,164.74 to Fannie Mae and to reimburse Fannie Mae's counsel the sum of $54,598.80 in pre-petition attorney's fees, $56,000.00 in post-petition attorney's fees, and $2,810.30 in expenses incurred in enforcing the first trust loan on the Property.

47.     Additionally, 3501 has been forced to incur substantial attorney's fees and expenses prosecuting and defending claims against Schaechter in an adversary proceeding filed in bankruptcy court, including claims (a) to clear the cloud on the title to 3501's Property caused by Nadel's act of recording the DOT and (b) to disallow the creditor claim made by Schaechter against 3501's bankruptcy estate arising out of the fictitious loan documented by Nadel.

48.     The creditors in 3501's bankruptcy case will receive less money and distributions because the fees and expenses 3501 has incurred in prosecuting and defending the claims against Schaechter in the adversary proceeding will be paid at a higher priority.

49.     Had Nadel not undertaken to act adversely to the interests of his client, 3501, and record the DOT against 3501's Property, 3501 would not have been required to pay to Fannie

Mae a prepayment premium in excess of $74,000.00 and reimburse attorney's fees and expenses in excess of $113,000.00 incurred by Fannie Mae in connection with the calling of the first trust loan on the Property.

50.     Had Nadel not undertaken to act adversely to the interests of his client, 3501, and disclosed his multiple conflicts of interest, 3501 would not have had to file for bankruptcy protection and would not have incurred substantial attorney's fees and expenses in prosecuting and defending the claims against Schaechter in the bankruptcy adversary proceeding, including claims (a) to clear the cloud on the title to 3501's Property caused by Nadel's act of recording the DOT and (b) to disallow the creditor claim made by Schaechter against 3501's bankruptcy estate arising out of the fictitious loan documented by Nadel.

## COUNT I
### (Legal Malpractice)

51.     The allegations contained in Paragraphs 1-50, *supra*, are hereby adopted and incorporated by reference as if fully set forth herein.

52.     Beginning in 2006, Nadel assumed the role of 3501's attorney and a concomitant duty to act in the best interests of 3501.

53.     As 3501's attorney, Nadel had a duty to avoid conflicts of interest and to refrain from acting in a manner likely to result in substantial injury to 3501.

54.     Nadel breached his duty to 3501 by falsely documenting the loan transaction between Schaechter and Madeoy so that it appeared that Schaechter loaned money to 3501 and that 3501 pledged its Property as collateral for the fictitious loan from Schaechter.

55.     Nadel further breached his duty to 3501 by simultaneously representing an adverse party, Schaechter, in connection with the amendment of the Note and the recordation of the DOT against 3501's Property.

56.     Nadel further breached his duty to 3501 by failing to disclose his simultaneous representation of an adverse party, Fannie Mae, when he undertook to record the DOT against 3501's Property.

57.     Nadel further breached his duty to 3501 by executing the Recordation Form and causing the DOT to be recorded with the District of Columbia Recorder of Deeds knowing that it would cause his other client, Fannie Mae, to call its first trust loan on the Property.

58.     Nadel's breach of the duties he owed to 3501 proximately caused injury to 3501 because Nadel's actions caused Fannie Mae to call its first trust loan on the Property which, in turn, caused 3501 to pay to Fannie Mae a prepayment premium in excess of $74,000.00 and reimburse attorney's fees and expenses in excess of $113,000.00 incurred by Fannie Mae in connection with the calling of the first trust loan on the Property.

59.     Nadel's breach of the duties he owed to 3501 proximately caused injury to 3501 because Nadel's actions caused Fannie Mae to call its first trust loan on the Property which, in turn, caused 3501 to file for bankruptcy protection and incur substantial attorney's fees and expenses prosecuting and defending claims against Schaechter in the bankruptcy adversary proceeding, including the claims (a) to clear the cloud on the title to 3501's Property caused by Nadel's act of recording the DOT and (b) to disallow the creditor claim made by Schaechter against 3501's bankruptcy estate arising out of the fictitious loan documented by Nadel.

WHEREFORE, Plaintiff respectfully requests:

(A) that the Court enter a monetary judgment in favor of Plaintiff and against Defendant in an amount to be determined at trial but which is not less than Five Hundred Thousand Dollars ($500,000.00); and

(B) that the Court order such other and further relief as the nature of this cause and the interests of justice may require.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Plaintiff hereby demands a trial by jury of all issues so triable in this action.

Respectfully submitted,

SCHLOSSBERG & MASTRO

Date:   January 11, 2016            By:      /s/ Frank J. Mastro
                                             Roger Schlossberg
                                             Frank J. Mastro #24679
                                             18421 Henson Blvd., Suite 201
                                             Hagerstown, MD 21742
                                             Telephone: (301) 739-8610
                                             *Attorneys for Plaintiff*