IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| ROGER SCHLOSSBERG, Plan Administrator under the Confirmed Plan of Liquidation of 3501 13th Street, N.W., LLC, | * * * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PX 16-100 |
| JEFFREY NADEL d/b/a Law Offices of Jeffrey Nadel, | * * | |
| Defendant. | * ****** | |

**MEMORANDUM OPINION**

Plaintiff, the Plan Administrator for a Chapter 11 bankruptcy liquidation plan for the LLC known as 3501 13 Street, N.W. ("3501"), brings this action based on his authority to pursue all claims on behalf of the bankrupt estate of 3501.[1] In essence, Plaintiff claims that attorney Jeffrey Nadel ("Nadel") conspired with and aided and abetted two clear wrongdoers, Robert Schaechter ("Schaechter") and Steven Madeoy ("Madeoy") to falsify a secured loan using the real property held by 3501 as the collateral, the recordation of which in the land records triggered a series of events that led to 3501's resort to filing bankruptcy. Presently pending and ready for resolution is Nadel's Motion to Dismiss or, in the alternative, Motion for Summary Judgment. ECF No. 18.

---

[1] Roger Schlossberg is the Plan Administrator under the *Plan of Liquidation* of 3501 13th Street, N.W., LLC under Chapter 11 of the Bankruptcy Code, confirmed an order entered on November 17, 2015 *(the "Confirmation Order"*) by the United States Bankruptcy Court for the District of Maryland in the case of *In re: 3501 13th Street, N.W., LLC,* (No. 13-22333) pending in that court.

1

Because no hearing is necessary, pursuant to Local Rule 106.5, and for the reasons that follow, the Motion is GRANTED.

## I.     BACKGROUND

The following facts are derived from Plaintiff's Amended Complaint, ECF No. 16. Because this matter can and is dispositively resolved without resort to facts outside the Amended Complaint, the Court will treat this Motion as one to Dismiss under Rule 12(b)(6) for failure to state a claim.

3501 is a limited liability corporation organized under the laws of the District of Columbia. Steve Madeoy retained a 45% membership interest in 3501, and at some point became its managing member. ECF No. 16 at 2–3. In December of 2006, Robert Schaechter loaned $500,000 to Madeoy personally ("the Schaechter Loan"). At no point did 3501 receive any benefits arising from the loan, directly or indirectly. *Id.*

Defendant Nadel assisted in the preparation of the documents related to the Schaechter Loan. The documents consisted of a promissory note and a Deed of Trust ("DOT") which made it appear as if Schaechter loaned the money to 3501, and that the loan was secured with 3501's principle asset—the real property located at 3501 13th Street, N.W., Washington, D.C., and owned in fee simple by 3501. ECF No. 16 at 4. The DOT was executed by Schaechter, Madeoy and a third member of the LLC, but not recorded initially because the recordation would trigger the first mortgage lender to accelerate the entire balance due on the mortgage per the terms of its loan agreement with 3501. *Id.* at 5.

2

By mid-2010, Schaechter grew concerned about Madeoy's failure to repay any of the loan. As a result, Madeoy and Schaechter requested that Nadel amend the promissory note, altering only the time for repayment, and then record the DOT with the District of Columbia. Nadel complied even though he knew that 3501 was not an actual party to the loan. ECF No. 16 at 5.

As a result of Nadel's actions, the DOT was filed with the District of Columbia Recorder of Deeds on August 5, 2010. ECF No. 16 at 7. Almost three years later, Fannie Mae, the lender holding the first mortgage on 3501, accelerated the entire balance of its $3.8 million loan, leaving 3501 no choice but to file for bankruptcy on July 19, 2013. *Id.* Although Schaechter was initially listed as a secured creditor of 3501 arising from the recordation of the DOT, the bankruptcy court held in an adversary proceeding that Schaechter did not have an enforceable lien against 3501. *Id.* Consequently, 3501 incurred substantial attorneys' fees and expenses litigating the adversary proceeding to clear title to 3501 13th Street, N.W. *Id.* To recover these losses on behalf of the bankrupt estate for 3501, Plaintiff filed the instant action.

## II.   DISCUSSION

### A.  Motion to Dismiss Standard

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, a complaint's factual allegations "must be enough to

3

raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

As a preliminary matter, the parties disagree over whether the substantive laws of the District of Columbia or Maryland apply. Because Maryland is the forum state, Maryland's choice-of-law rules apply. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *see also Rawl's Auto Auction Sales, Inc. v. Dick Herriman Ford, Inc.*, 690 F.2d 422, 426 (4th Cir. 1982). Maryland follows the principles of *lex loci delicti* in determining choice of law. *Great American Ins. v. Nextday Network Hardware Corp.*, 73 F. Supp. 3d 636, 640 (D. Md. 2014). In tort actions, the court applies the law of the state in which the last event required to constitute the tort had taken place. *Id.*

In this case, Maryland law applies because the last event triggering the injury to 3501 occurred in Maryland. Specifically, Nadel, Schaechter and Madeoy executed the promissory note and DOT in Maryland in 2006, and amended the same in 2010. ECF No. 16 at 4, Ex. 2. Upon execution, a DOT is "valid between the parties," regardless of when recorded. *Stebbins-Anderson, Co. v. Bolton*, 208 Md. 183, 190 (1955); *see also Chicago Title Ins. Co. v. Mary B.*, 190 Md. App. 305 (2010). The DOT and promissory note solidified that the property held by 3501 was fraudulently pledged as collateral to secure the loan between Schaechter and Madeoy.

4

Accordingly, at the time of the DOT's execution, the property held by 3501 became encumbered and could theoretically be used to satisfy the outstanding amount if Madeoy defaulted. Because these transactions occurred in Maryland, the laws of Maryland apply.

### B. Count I: Civil Conspiracy

3501 alleges that Defendant Nadel conspired with Schaechter and Madeoy to create, execute and record fictitious loan documents that pledged the real property held by 3501 as collateral to secure Madeoy's personal loan from Schaechter. ECF No. 8-9. Although the complaint does not make clear exactly what tortious conduct Nadel conspired to commit, a fair reading renders Nadel potentially liable for conspiring to defraud 3501. *Id*. Plaintiff avers that Nadel "agreed to disguise the Schaechter loan" as one made to 3501 instead of Madeoy, as well as prepare, execute and record a fictitious DOT while posing as 3501's "agent." *Id.* at 9. Because this collective conduct clouded title to 3501's real property, the Plaintiff was forced to incur substantial attorney's fees in bankruptcy clearing title. ECF No. 16 at ¶¶ 51–57. The fatal flaw in these allegations as pled is that none of the coconspirators engaged in any overt acts to *defraud 3501*.

In Maryland, civil conspiracy is a "combination of two or more persons by an agreement or understanding to accomplish and unlawful act or use unlawful means to accomplish an unlawful act not in itself illegal, with the further requirement that the act or means must result in damages to the plaintiff." *Hoffman v. Stamper*, 385 Md. 1, 24 (2005) (citation and internal quotation marks omitted). Maryland does not recognize a stand-alone claim of "conspiracy." Rather, a plaintiff must plead and prove that the defendant conspired to commit a specific underlying tort.

*See Shenker v. Laureate Educ.*, 411 Md. 317, 352 (2009) (conspiracy is "not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff") (quoting *Alleco, Inc. v. Harry & Jeanette Weinberg Foundation, Inc.*, 340 Md. 176, 189 (1995)).

More specifically, to proceed on a conspiracy claim, the plaintiff must plead and prove "the commission of an overt act, in furtherance of the agreement that caused the plaintiff to suffer actual injury." *Shenker*, 411 Md. at 352 (citation and internal quotation marks omitted). "The tort of civil conspiracy lies in the act causing the harm; the agreement to commit the act is not actionable on its own but rather is in the nature of the aggravating factor." *Id.* (citation and internal quotation marks omitted). Thus, Plaintiff must aver that "some act was performed in furtherance of the conspiracy," to commit the underlying tort "even if performed by another participant." *Id.*

The underlying tortious act as pleaded in the complaint is fraud. In Maryland, the elements of fraud are: (1) the defendant made a false representation *to the plaintiff*; (2) the falsity of the representation was either known to the defendant or the representation was made with reckless indifference to its truth; (3) the misrepresentation was made for the purpose of *defrauding the plaintiff*; (4) *the plaintiff relied on the misrepresentation* and had a right to rely on it; and (5) the plaintiff suffered a compensable injury as a result. *Stamper*, 385 Md. at 29; *see also Alleco*, 340 Md. at 196–97 (collecting cases).

Here, 3501 alleges that the acts underlying the conspiracy were the creation of the fake loan documents and filing them with the D.C. Recorder of Deeds. ECF No. 16 at 8–9. None of these acts, however, are in furtherance of a fraud on 3501. This is so because, first and foremost, the false statements were never made to 3501. Similarly, Nadel's alleged misrepresentation when

6

posing as 3501's "agent" was contained only in documents filed with the District of Columbia Recorder of Deeds, and not to 3501. Accordingly, none of the alleged misstatements ever reached 3501, and so cannot be considered an act in furtherance of a conspiracy to defraud 3501.[2]

Nor could any of the alleged overt acts have furthered a fraud against 3501 because 3501 could not have detrimentally relied on the false statements. In Maryland, detrimental reliance cannot be established through reliance by a third party such as the D.C. Recorder of Deeds. In *Exxon Mobil Corp. v. Albright*, Maryland's highest court unequivocally held that "third party reliance fails to satisfy the requirement that Appellees demonstrate personal reliance." 433 Md. at 334. The *Exxon* Plaintiffs, a class of homeowners whose property was damaged by a colossal gasoline spill, pursued a fraud claim based on misrepresentations *Exxon* made to public entities, namely Baltimore County and the State of Maryland. *Id.* at 335. Plaintiff homeowners claimed that Exxon "perpetuated an ongoing fraud designed to deceive both public authorities and members of the community." *Id.* In reversing the jury verdict finding Exxon liable for fraud, the Court made clear that Plaintiffs cannot bring a fraud action where "they have admitted no direct, indirect or personal reliance" even if Plaintiffs could establish that the public entities detrimentally relied on Exxon's false statements. *Id.* at 337.

Similarly, Plaintiff 3501 has alleged only that the false statements were made to the D.C. Recorder of Deeds, and that as a result, the Recorder took actions consistent with believing the

---

[2] 3501 is also hard pressed to claim that the false loan documents ginned up by Nadel, acting in concert with Madeoy, were made to 3501 *via* Madeoy as managing partner and thus agent of 3501. As the Amended Complaint alleges, Madeoy's misconduct constituted a breach of his fiduciary duty to 3501. It would be illogical to claim that Madeoy at once could conspire to defraud 3501, breach his fiduciary duty to 3501, and also be the *victim* (as the recipient of the alleged false statements) on behalf of 3501. *See, e.g.*, *Hecht v. Resolution Trust Corp.,* 333 Md. 324, 345 (1994) ("knowledge of an agent whose interests are adverse to the principal cannot be imputed to the principal.") (citing *Lohmuller Bldg. v. Gamble*, 160 Md. 534, 541 (1931)).

7

statements to be true—recording the DOT. But nowhere does or can 3501 allege these acts were taken in furtherance of 3501 detrimentally relying on any of the false loan documents. Accordingly, the complaint fails to establish how any of the alleged overt acts could have furthered a fraud on *3501*.

Equally unavailing is an attempt to construe the Amended Complaint as alleging a conspiracy to breach fiduciary duties owed to 3501. First and foremost, Maryland does not recognize breach of fiduciary duty as a separate cause of action. *See Wasserman*, 197 Md. at 631 ("[A]lthough the breach of a fiduciary duty may give rise to one or more causes of action, in tort or in contract, Maryland does not recognize as a separate tort action for breach of fiduciary duty.") (quoting *Int'l Bhd. Of Teamsters v. Willis Corroon Corp. of Md.*, 369 Md. 724, 727 n.1 (2002)); *see also Lathan v. Sternberg*, 2015 WL 6125427, No. 0988 at *5 (Md. Ct. Spec. App. Sept. 30, 2015). Thus, this Court is hard pressed to recognize a claim for conspiracy to commit the same.

Even more fundamentally, however, Nadel cannot be said to have taken any steps in furtherance of breaching a fiduciary duty to 3501 because he legally had no duty to 3501 in the first instance. To sustain a conspiracy, Plaintiff must plead and prove that the Defendant was "legally capable of committing the underlying tort alleged." *Shenker*, 411 Md. at 352; *see also Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, 195 (1995) (finding a conspiracy of breaching fiduciary duty lacking where there was no underlying duty). Here, the underlying tort arguably is breach of fiduciary duty. But where the Defendant owes no such duty *vis* the Plaintiff, Plaintiff is rendered "legally incapable" of committing the underlying tort, and by extension, conspiracy to commit the underlying tort. *Shenker*, 411 Md. at 352 ("[T]ort liability arising from a conspiracy presupposes that the coconspirator is legally capable of

8

committing a tort, that is, that she owes a duty to the plaintiff recognized by law and is potentially subject to liability for breach of that duty.") (quoting *Bahari v. Countrywide Home Loans*, 2005 WL 3505604, at *6 (D. Md. Dec. 16, 2005)).

On this point *Shenker* is instructive. There the Maryland Court of Appeals pronounced that "liability for civil conspiracy based on the underlying tort of breach of fiduciary duty (were it recognized) would require proof that the defendant, although not committing personally the underlying tort, was legally capable of committing the underlying tort." *Id.* But where, as here, the wrongdoer "owed no fiduciary duty to [defendant], they may not be held liable for civil conspiracy in this case." *Id.*

Nadel acting in his capacity as an attorney, owed a duty of diligence and care "only to his direct client/employer," Madeoy, and possibly Schaechter. *Goerlich v. Courtney Industries, Inc.*, 84 Md App. 660, 663 (1990). He did not owe any such duty to 3501 because at no point did he serve as 3501's attorney. *Cf. id.* (holding defendant attorney representing corporation had no fiduciary duty to individual employee). Accordingly, Nadel cannot be held liable for conspiring to breach a duty that he never had in the first place. Thus, Count I of the Amended Complaint must be dismissed.

### C. Count II: Aiding and Abetting "Tortious Conduct"

Plaintiff's remaining count—styled as "aiding and abetting tortious conduct"—can only be read as a claim against Nadel for aiding and abetting Madeoy's breach of fiduciary duty. Specifically, 3501 claims that "Madeoy breached **his fiduciary duty** to 3501," and Nadel "rendered substantial assistance and encouragement to Madeoy by preparing and amending the fictitious promissory note, by preparing the fictitious DOT and by causing the fictitious DOT to be recorded in the District of Columbia," which resulted in a lien against 3501's property and

9

subsequent related injury. ECF No. 16 at 10. But because Maryland does not recognize breach of fiduciary duty as a standalone cause of action, plaintiff cannot aid and abet a non-existent claim.

Indeed, "[t]here is no universal or omnibus tort for the redress of breach of fiduciary duty by any and all fiduciaries." *Wasserman v. Kay*, 197 Md. App. 586, 630 (2011) (quoting *Kann v. Kann*, 344 Md. 689 (1997)). Although "an alleged breach of fiduciary duty may give rise to a cause of action such as breach of contract . . . it does not, standing alone, constitute a cause of action. *Id.*; *see also Vinogradova v. Suntrust Bank, Inc.*, 162 Md. App. 495, 510–11 (2005) ("Maryland does not recognize a separate tort action for breach of fiduciary duty.") (quoting *International Bhd. Teamsters v. Willis Corrooon Corp of Maryland*, 369 Md. 724, 727 n.1 (2002)). Because Count I read most favorably to 3501 does not plead any specific cause of action other than aiding a breach of fiduciary duty, it must be dismissed. *Wasserman*, 197 Md. App. at 631–32.

That Nadel is alleged to have "aided and abetted" Madeoy's breach of fiduciary duty does not change this analysis. This is because "tort liability for aiding and abetting can only exist where someone has committed the actual tort," *See Alleco*, 340 Md. at 201 (dismissing aiding and abetting breach of fiduciary duty because underlying tort was not adequately alleged). In such circumstances, "the underlying tort is the cause of action that should be set forth in a separate count . . . [and the] alleged aiders, abettors, and co-conspirators are simply additional parties jointly liable with the principal perpetrator." *Mankhi v. Mass Transit Admin.*, 360 Md. 333, 359 n.6 (2000). Count II alleges only that Nadel "rendered substantial assistance and encouragement to Madeoy" by preparing and filing fake loan documents, which constituted a breach of Madeoy's fiduciary duty to 3501. Without more, Count II simply fails to plead a legally cognizable cause of action in Maryland and thus must be dismissed.

### III.    CONCLUSION

Accordingly, the Amended Complaint, on its face, fails to establish that an underlying tort was committed upon 3501 and that Nadel owed a duty to the Plaintiff. Thus, Plaintiff's claims of civil conspiracy and "aiding and abetting tortious conduct" fail as a matter of law. Defendant's motion to dismiss is granted. A separate order will follow.

 8/10/2016                                                          /s/
Date                                                                Paula Xinis
                                                                    United States District Judge